J-S23007-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TIMOTHY JOHN ANTHONY, | |
| Appellant | No. 536 WDA 2018 |

Appeal from the Judgment of Sentence Entered February 27, 2018
In the Court of Common Pleas of Venango County
Criminal Division at No(s): CP-61-CR-0000617-2016

BEFORE: BENDER, P.J.E., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    FILED JUNE 18, 2019

Appellant, Timothy John Anthony, appeals from the judgment of sentence of an aggregate term of 5-10 years' incarceration, imposed following his conviction for drug and firearm offenses. After careful review, we affirm.

On April 6, 2016, Venango County Sheriff Eric Foy, Deputy Sheriff Ryan Williams, and Deputy Sheriff Jeffrey Hollidge, Jr., along with Pennsylvania State Troopers Adam Haun, Devin Seybert, and Bingman[1] went to 1729 Meadville Road in Venango County to apprehend Appellant, who was barred from that address pursuant to a protection from abuse order (hereinafter "PFA"). N.T., 9/21/17, at 37, 51-52. Deputy Williams approached the front

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Trooper Bingman's first name is not mentioned in the record.

door, knocked, and announced, "Sheriff's Office" and "come to the door." Id. at 39. For the next several minutes, nobody answered. Id. at 39-40. Trooper Bingman eventually used a battering ram to gain entry. Id. at 41. Soon thereafter, Deputy Williams heard "a loud yell or scream from inside...." Id. at 42.

Trooper Haun was watching a side entrance to the home when he heard Trooper Bingman breach the front door and the subsequent scream. Id. at 86. Trooper Haun then observed Appellant exiting the side entrance, wearing nothing but a leather thong. Id. at 100. He was holding a "fake vagina" sex toy in one hand, and a "pet rabbit"[2] in the other. Id. at 87. Trooper Haun ordered Appellant to the ground at gunpoint. Id. at 88. Appellant dropped the sex toy and the rabbit, complied with the officer's commands, and was immediately taken into custody. Id. Trooper Haun later discovered a loaded shotgun on the living room couch.[3] Id. at 90-91. Three other firearms were discovered in plain view throughout the house, two in another first-floor room, and one in a second-floor bedroom. Id. at 91-92, 128.

_____

[2] Trooper Haun verified that it was "a real rabbit." Id. at 87.

[3] Venus Nikole Anthony, who had sought the PFA against Appellant, and who also resided at 1729 Meadville Road (but was not present when police detained Appellant), provided written consent to a search of the premises after Appellant's arrest.

Following the seizure of these firearms and live marijuana plants from Appellant's home,[4] the Commonwealth charged him with four counts of possession of a firearm prohibited ("PFP"), 18 Pa.C.S. § 6105; and one count each of the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance ("PWID"), 35 P.S. § 780-113(a)(30); possession of drug paraphernalia, 35 P.S. § 780-113(a)(32); and conspiracy to PWID, 18 Pa.C.S. § 903. Appellant negotiated a guilty plea to PWID, and the Commonwealth nolle prossed the drug paraphernalia charge and withdrew the conspiracy charge. A jury convicted Appellant of all firearm counts on September 21, 2017. Subsequently, on February 26, 2018, the trial court sentenced Appellant to concurrent terms of 5-10 years' incarceration for each PFP count, and to a concurrent term of 2-4 years' incarceration for PWID. Appellant filed a timely motion for reconsideration of his sentence, which the trial court denied on March 19, 2018. He also timely filed a notice of appeal. Appellant filed a timely, court-ordered Pa.R.A.P. 1925(b) statement on June 28, 2018, and the trial court issued its Rule 1925(a) opinion on July 24, 2018.

Appellant now presents the following questions for our review:

> I.   Whether or not the evidence was insufficient to sustain the verdict[] of four counts of persons not to possess a firearm because the Commonwealth failed to prove beyond a reasonable doubt that Appellant had constructive possession of the four guns found at 1729 Meadville Road, Titusville, Pa.—both the power to control the guns and the

_____

[4] The seizure of the marijuana plants was not the subject of any trial testimony, as the charges related to that contraband were severed from the firearm charges prior to trial.

intent to control the guns—when ... Appellant was merely present at the residence on April 6, 2016?

II.   Whether or not the trial court erred in allowing the Commonwealth to use the affidavit of probable cause in support of an alleged PFA violation as a prior consistent statement of Chief Deputy Danny J. Bimber, when Chief Bimber did not author the affidavit of probable cause and the statement was hearsay?

Appellant's Brief at 3.

In Appellant's first claim, he asserts that there was insufficient evidence to convict him of the four counts of PFP.   Specifically, he claims that the Commonwealth lacked sufficient evidence that he constructively possessed the firearms found in the home because the Commonwealth did not provide testimony establishing that Appellant resided there.   He argues:

The Commonwealth did not present any testimony or offer evidence that ... Appellant owned the residence and/or leased the residence.   There was no evidence presented that ... Appellant had a key to the residence, had utilities from the residence registered in his name, listed the residence on his personal identification such as his driver's license, or presented any evidence that [he] was residing at the residence such as mail, documents in his name, or other indicia of evidence found during the search of the said residence.   Clearly, had ... Appellant been residing at the residence, the search of the residence would have yielded bills in ... Appellant's name, utilities in ... Appellant's name, or other documents or indicia of [his] residing at that residence.

Id. at 14.

Our standard of review of sufficiency claims is well-settled:

A claim challenging the sufficiency of the evidence is a question of law.   Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.   Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human

experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

A person is guilty of PFP if, having been previously convicted of a criminal offense enumerated in Section 6105(b), he possesses, uses, controls, sells, or transfers a firearm in the Commonwealth of Pennsylvania. 18 Pa.C.S. § 6105(a)(1). Appellant does not dispute that he was previously convicted of an offense enumerated in Section 6105(b); instead, he challenges whether the Commonwealth sufficiently proved that he constructively possessed the aforementioned firearms.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

Commonwealth v. Hopkins, 67 A.3d 817, 820 (Pa. Super. 2013) (cleaned up).

In its Rule 1925(a) opinion, the trial court concluded that there was sufficient evidence supporting Appellant's conviction on four counts of PFP. Trial Court Opinion ("TCO"), 7/24/18, at 13-17. The court first addressed the undisputed evidence that Appellant was previously convicted of an offense

enumerated in Section 6105(b). Id. at 15. The court then detailed some of the evidence demonstrating Appellant's conscious dominion over the firearms discovered. Id. at 15-16 (reciting Deputy Hollidge's testimony that Appellant was alone in the home; that he was seen in the living room immediately following the breach of the door and before he fled out another exit; that a loaded shotgun was on the couch in that living room next to a fresh plate of spaghetti; and that two additional firearms were in the open in another nearby room, leaning against the doorway area).

The jury was free to infer that Appellant had both the power to control these firearms, and the intent to exercise control over them in these circumstances. This was not a situation where Appellant was merely present at a location where firearms were discovered. None of the cases cited by Appellant, discussed below, supports his claims to the contrary.

In Commonwealth v. Vargas, 108 A.3d 858 (Pa. Super. 2014), we concluded that the evidence was sufficient to support a finding of constructive possession of drugs and related paraphernalia where the defendant was found alone in a hotel room and the at-issue contraband was "strewn about the room." Id. at 869. We noted that testimony establishing that the room was used as a drug manufacturing operation also dispelled the notion that he was merely present therein, because it would be highly unlikely for the operators of such an operation to allow the defendant to be there unless he was an active participant in their illegal enterprise. Id. Thus, Vargas is unhelpful to Appellant because 1) it involved substantially different circumstances than the

- 6 -

present case; and 2) the Vargas Court concluded that the Commonwealth had established the defendant's constructive possession of the at-issue contraband.

In Commonwealth v. Boatwright, 453 A.2d 1058 (Pa. Super. 1982), this Court held that there was insufficient evidence to convict the defendant of constructive possession of a firearm discovered in the rear portion of a vehicle, where the defendant was seated in the front seat of the automobile, and a firearm was discovered on the left rear floor. However, "[i]n addition to [Boatwright], the car was occupied by the driver and another passenger who was seated in the left rear seat. The car was registered to the driver's girlfriend and the gun to one Darlene Simpson." Id. at 1058–59. The only evidence that Boatwright intended to exercise control of the firearm was the fact that an officer observed him moving slightly in that direction, but the "officer could not see [Boatwright]'s hand or arm, only a movement of his body." Id. at 1058. However, in the instant case, Appellant was alone in the home where the firearms were discovered in plain view, one of which was immediately next to warm food and a laptop where Appellant was most likely seated immediately before the police breached the door. The critical issue in Boatwright was whether the defendant had joint possession with the other people in the immediate vicinity of the firearm in an automobile. Accordingly, we conclude that the Boatwright decision is inapposite.

Finally, Appellant also cites to Commonwealth v. Townsend, 237 A.2d 192 (Pa. 1968), but we find that case easily distinguishable from the

instant matter as well. Townsend also concerned joint possession of firearms located in an automobile. Townsend was found in a car where multiple firearms were discovered by police. Id. at 193-94. No evidence demonstrated his intent to control the firearms beyond his mere presence in the vehicle, which the Court deemed to be insufficient to demonstrate constructive possession. Id. at 194-95. Thus, Townsend also fails to provide any support for Appellant's arguments. There was evidence in this case above and beyond his mere presence in the home where the firearms were located.

Appellant argues that there was no evidence of when his wife was last in the home, suggesting that she may have left the plate of fresh spaghetti near the firearm laying on the couch. This is rank speculation, and does not undermine the jury's ability to make the rational inference regarding Appellant's constructive possession of the firearms. Appellant also argues that the inferences applied to the shotgun in the living room do not extend to the firearms found in an adjacent room, and even less so to the firearm discovered upstairs. We disagree. The jury was free to infer that Appellant was treating the home as his own,[5] and was not merely visiting without

_____

[5] Indeed, there was more evidence that this was Appellant's home, and that the PFA, served on him a day earlier, had compelled him to vacate the premises. Appellant received the PFA at the Sheriff's office, and informed Chief Deputy Danny Bimber at that time that he "wasn't going to leave the house" because he had to take care of his dogs and rabbits. N.T., 9/21/17, at 163-64. The jury could have reasonably concluded that Appellant was found in his own home, despite having been legally barred from residing there, and that the contents therein were within his constructive possession.

knowledge of or intent to control the contents therein, especially given the unique and arguably comical circumstances in which he was apprehended.

Additionally, all four firearms were located in plain view, and the jury was free to infer Appellant's guilty conscience from the fact that he immediately tried to flee when the door was breached by law enforcement. See Commonwealth v. Logan, 184 A.2d 321, 323 (Pa. Super. 1962) ("Flight is evidence of guilt, and in connection with other proof, may be the basis from which guilt may be inferred."). Moreover, we also find that it would be reasonable for the jury to infer from Appellant's conscious dominion over the firearm in the living room that he also exercised conscious dominion over the remaining firearms, especially since they could have concluded that this house was Appellant's own home. See n.5, supra.

Finally, as to testimony provided by defense witnesses that contradicts the inferences and evidence discussed above, the jury was free to disbelieve their testimony and, furthermore, this Court is "required to view the evidence in the light most favorable to the verdict winner" when considering a challenge to the sufficiency of the evidence. Widmer, 744 A.2d at 751. For all the aforementioned reasons, we conclude that there was sufficient evidence to convict Appellant on all four counts of PFP.

Next, Appellant argues that the trial court erred in allowing the Commonwealth to use the affidavit of probable cause in support of an alleged PFA violation as a prior consistent statement by Chief Bimber, because Chief Bimber did not author the affidavit and it was therefore inadmissible hearsay,

and because it was not actually a prior consistent statement in the context in which it was admitted. We agree with the Commonwealth that this issue was not specifically raised in Appellant's Rule 1925(b) statement, see Pa.R.A.P. 1925(b) Statement, 6/28/18, at 2-3, ¶¶ 8-12, and, therefore, it is waived. See Commonwealth v. Lord, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived."). In Appellant's Rule 1925(b) statement, he raised the claim that details related to the PFA (which presumably includes the affidavit at issue) were inadmissible due to a pre-trial ruling that such information constituted evidence of a prior bad act. However, he did not raise the specific claim that any such information relating to the PFA remained inadmissible when used as rebuttal to Appellant's cross-examination of Chief Bimber. As these issues are clear and distinct, and because the issue raised by Appellant in his brief was not preserved in his Rule 1925(b) statement, we are compelled to find that it has been waived.

Judgment of sentenced affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/18/2019